**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAHMIER A. EVERETT,

                              Plaintiff,

            v.                                                3:20-CV-01260 (AMN/ML)

SHAWN DEAN and RONALD LUSSI,

                              Defendants.

---

**APPEARANCES:**                                        **OF COUNSEL:**

**JAHMIER A. EVERETT**
22-B-1079
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582
Plaintiff, *Pro Se*

**HON. LETITIA JAMES**                               KOSTAS D. LERIS, ESQ.
New York State Attorney General                      Assistant Attorney General
The Capitol
Albany, NY 12224
*Attorney for Defendants*

 **Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        On October 13, 2020, Plaintiff *pro se* Jahmier Everett ("Plaintiff") commenced this action

pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging various constitutional, statutory, and

common law claims stemming from an investigation and criminal charge by New York State Police

("NYSP") Investigator Shawn Dean and NYSP Senior Investigator Ronald Lussi (collectively

"Defendants").  *See* Dkt. No. 1.  This case was referred to United States Magistrate Judge Miroslav

Lovric, who, on February 26, 2021, issued an Order and Report-Recommendation ("Report-Recommendation"), granting Plaintiff's amended *in forma pauperis* ("IFP") application, Dkt. No. 5,[1] and recommending that Plaintiff's Fourth Amendment false arrest and malicious prosecution claims proceed against Defendants.  *See* Dkt. No. 7.  On March 30, 2021, the Court adopted the Report-Recommendation in its entirety.  *See* Dkt. No. 10.

On March 22, 2021, Plaintiff filed an Amended Complaint.  Dkt. No. 9.  Magistrate Judge Lovric conducted a *sua sponte* review and recommended that the following four claims proceed: (1) fabrication of evidence against Defendant Dean; (2) defamation against Defendant Dean; (3) Fourth Amendment false arrest against Defendants; and (4) Fourth Amendment malicious prosecution against Defendants.  *See* Dkt. No. 12.[2]  On July 19, 2021, the Court adopted the Report-Recommendation in its entirety, *see* Dkt. No. 13, and on September 20, 2021, Defendants filed an Answer to the Amended Complaint.  *See* Dkt. No. 22.

On August 19, 2022, Defendants filed a motion for summary judgment ("Motion"), Dkt. No. 39, and on October 20, 2022, Plaintiff filed a Cross-Motion for summary judgment ("Cross-Motion") and an Opposition.  Dkt. No. 50.[3]  On November 4, 2022, Defendants filed an Opposition to the Cross-Motion and a Reply to Plaintiff's Opposition.  *See* Dkt. No. 51.  For the reasons set

---

[1] Plaintiff's initial IFP application was denied as incomplete, and the case was administratively closed.  *See* Dkt. Nos. 2, 4.

[2] Magistrate Judge Lovric also recommended dismissing, with leave to replead, Plaintiff's claim of supervisory liability against Defendant Lussi and dismissing, without leave to replead, Plaintiff's Amended Complaint to the extent it alleged claims for (1) *respondeat superior* against Defendant Lussi, (2) due process violations against Defendants, (3) fabrication of evidence against Defendant Lussi, (4) all claims against Defendants in their official capacities, and (5) harassment pursuant to New York state common law against Defendants.  *See* Dkt. No. 12 at 16.

[3] The Court is mindful that due to Plaintiff's *pro se* status, his submissions are held "to less stringent standards than formal pleadings drafted by lawyers."  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citations omitted).  Therefore, the Court has construed Plaintiff's Cross-Motion for summary judgment as also including his Opposition to the Motion.  *See* Dkt. No. 50.

forth below, Defendants' Motion is granted in its entirety and Plaintiff's Cross-Motion is denied.

## II.     BACKGROUND[4]

This action arises out of Plaintiff Jahmier Everett's August 28, 2019 arrest, as a result of which he was charged with criminal sale of a controlled substance ("CSCS") in the third degree under New York Penal Law § 220.39(1).[5]  Dkt. No. 9 at 4.[6]  Plaintiff alleges that he "was falsely arrested and unlawfully imprisoned" on the basis of an "illusionary drug sale" fabricated by Defendants[7] in order to implicate him in an unrelated homicide that occurred in Tioga County, New York.  *Id.*  Plaintiff alleges that as a result of Defendants' actions, he suffered "loss of wages[,] mental anguish[,] humiliation [and] anxiety[,] and [was] displaced from his children and loved ones."  Dkt. No. 9 at 6.

In May 2019, the NYSP Troop C Major Crimes Unit ("Major Crimes") contacted Troop C VGNET requesting that they conduct a controlled purchase ("Controlled Purchase").  Dkt. No. 39-5 at ¶ 4.[8]  The subject of the Controlled Purchase was Plaintiff, who also goes by the street name "Jah Diggz."  Dkt. No. 39-2 at ¶ 7.  Major Crimes contacted VGNET to conduct the Controlled

---

[4] The Court has drawn the facts stated herein from the Amended Complaint and the parties' submissions and the attached exhibits.  *See* Dkt. Nos. 9, 39, 50, 51.  The Court construes the facts relevant to each party's motion in the light most favorable to the non-moving party.

[5] "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells ... a narcotic drug."  *Reeder v. Vine*, No. 6:20-CV-06026 (EAW), 2023 WL 2044126, at *3 n.2 (W.D.N.Y. Feb. 16, 2023) (quoting N.Y. Penal Law § 220.39(1)). This crime is classified as a Class B felony.  *Id.*

[6] Citations to court documents, including deposition transcripts, utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[7] During the relevant time period, Defendant Dean was employed as an Investigator, and Defendant Lussi as a Senior Investigator, for the NYSP on the New York State Violent Gangs and Narcotics Enforcement Team ("VGNET").  Dkt. No. 39-5 at ¶¶ 2-3.

[8] A controlled purchase is "an undercover drug-type operation" which typically uses a confidential informant to complete the purchase.  Dkt. No. 39-2 at ¶ 6.

Purchase because "Plaintiff was a known drug dealer in the Greater Binghamton Area" and the "NYSP ha[d] information that Plaintiff has been selling narcotics in the Greater Binghamton Area dating back to the mid-2000s." Dkt. No. 39-2 at ¶ 7; Dkt. No. 39-5 at ¶ 5. Defendant Dean was the lead agent assigned to the Controlled Purchase, and Defendant Lussi's role was to "oversee the controlled purchase and supervise [Defendant] Dean's handling of the case." Dkt. No. 39-3 at ¶ 8.

At the time Major Crimes contacted VGNET, Plaintiff was being investigated by Major Crimes for a homicide which occurred in May 2019 in Tioga County, New York. Dkt. No. 39-5 at ¶¶ 4, 7. Major Crimes obtained a telephone number, (607) 232-7303 ("the telephone number"), which was allegedly connected to the homicide, and requested that VGNET contact this number as part of the Controlled Purchase and verify that the telephone number belonged to Plaintiff. *Id.* at ¶¶ 6-7.[9]

The NYSP Special Investigations Unit provided VGNET with a confidential informant ("CI") who "was known to have knowledge of" Plaintiff, to conduct the Controlled Purchase. *Id.* at ¶¶ 11-12.[10] In May 2019, Defendant Dean requested that the CI contact the telephone number and arrange to purchase crack cocaine from Plaintiff. *Id.* at ¶ 13. The CI contacted the telephone number in the presence of Defendants and arranged for a purchase of narcotics. *Id.* at ¶¶ 15-16.[11]

---

[9] Plaintiff asserts that he "never owned nor used any device registered to (607) 232-7303." Dkt. No. 50 at 101.

[10] Plaintiff asserts that Defendants produced no affirmative evidence that a CI existed and even assuming that a CI did exist, Defendants have not shown that the CI was credible. Dkt. No. 50 at 101.

[11] Defendants submitted an unredacted photograph of the CI's telephone for *in camera* inspection. Dkt. No. 39-2 at ¶ 11 & n.2. Plaintiff submitted as an exhibit a partially redacted photograph of the CI's telephone, contacting "Jay" at the telephone number to arrange for the Controlled Purchase. Dkt. No. 50 at 97-99. While Plaintiff testified that he also goes by the name "Jah Diggs," *see* Dkt. No. 39-1 at 69:21-70:4, Plaintiff asserts that "there is no admissible evidence to support that Plaintiff goes by the name 'Jay.' This shows that this call log is <u>not</u> the plaintiff." Dkt. No. 50 at 8, 102.

The CI was searched prior to the purchase to confirm that the CI was not in possession of any contraband, and the CI was supplied with a recording device and cash. *Id.* at ¶ 18. The CI then went with an undercover officer in an unmarked patrol vehicle to meet Plaintiff. *Id.* at ¶ 19. Defendants followed the unmarked vehicle and parked in a location where they could not visually see the alleged transaction between the CI and Plaintiff but could hear the entire conversation through the recording device provided to the CI. *Id.* at ¶¶ 20-22.[12] After a short period of time, the CI returned to the NYSP undercover vehicle without the cash and with drugs, which later field tested positive for the presence of cocaine. *Id.* at ¶¶ 23, 25-26.[13]

The CI was interviewed in the presence of Defendants and provided a supporting deposition which Defendant Dean transcribed by hand. *Id.* at ¶¶ 27-28.[14] The CI reviewed the statement and signed it "verifying its authenticity." *Id.* at ¶ 29.[15] VGNET then alerted Major Crimes that the Controlled Purchase was completed. *Id.* at ¶ 30. Major Crimes requested that VGNET "wait to arrest [Plaintiff] until the homicide investigation was complete," which VGNET

---

[12] A copy of the audio recording of the conversation between the CI and allegedly Plaintiff was provided to the Court for *in camera* inspection. *See* Dkt. No. 39-2 at ¶ 12.

[13] Plaintiff alleges that the drug sale never occurred and was "fabricated by [Defendant] Dean due to the fact that [he] could not be charged with the homicide," and because Defendant Dean only "listened to the conversation" instead of visually observing it, there is no direct proof that Plaintiff is the person on the recording. Dkt. No 50 at 3, 5, 8, 101-03.

[14] The CI's supporting deposition describes the Controlled Purchase, including that the NYSP asked the CI to "[b]uy crack cocaine from Jay Diggs," and the CI "called Jay" at the telephone number and purchased drugs. *See* Dkt. No. 9 at 11-12. Plaintiff argues that Defendant Dean's handwritten transcription and redaction of the CI's signature makes it "impossible to verify" that the CI existed. Dkt. No. 50 at 6. Defendant Dean declared that it is common practice for an officer to transcribe a CI's statement by hand so that the CI does not inadvertently produce a handwriting sample that could be later used for identification. Dkt No 39-2 at ¶ 15.

[15] Defendant Dean also "logged the drugs seized from Plaintiff after the May 2019 controlled purchase in an NYSP evidence log," (the "Evidence Log") indicating the date and time of the sale, as well as the quantity of crack cocaine seized. Dkt. No. 39-5 at ¶¶ 33-35. Those specific details were redacted before the Evidence Log was disclosed to Plaintiff to protect the identity of the CI. *Id.* at ¶ 36.

agreed to.  *Id.* at ¶¶ 31-32.[16]  On August 28, 2019, Plaintiff was arrested and charged with CSCS in the Third Degree.  Dkt. No. 39-4 at ¶¶ 41, 45.  Defendants were not present when Plaintiff was arrested, processed, and interviewed.  *Id.* at ¶¶ 42, 44.  Plaintiff alleges that while he was questioned about allegations related to being a drug dealer, he was mostly questioned about a homicide case.  Dkt. No. 50 at 2.

Defendant Dean, as lead agent, prepared and signed a Felony Complaint with respect to the CSCS charge.  Dkt. No. 9 at 8; Dkt. No. 39-5 at ¶ 46.[17]  Additionally, an Arrest Report was prepared and Defendants reviewed and signed the Report.  Dkt. No. 39-5 at ¶¶ 47-49.[18]  Plaintiff was arraigned in Binghamton City Court and remanded to the Broome County Jail.  *Id.* at ¶ 51.

On September 12, 2019, Defendant Dean testified before a Grand Jury in Tioga County regarding Plaintiff's homicide case.  *Id.* at ¶ 53.  In the course of his testimony, Defendant Dean testified regarding the May 2019 Controlled Purchase and stated that the CI contacted Plaintiff using the telephone number and subsequently purchased narcotics from Plaintiff.  *Id.* at ¶ 54.[19]

On March 17, 2020, Senior Assistant District Attorney Anthony Frank ("Senior ADA Frank")[20] dismissed Plaintiff's CSCS charge related to the May 2019 Controlled Purchase.  Dkt.

---

[16] In their Declarations, Defendants assert that they agreed to wait to arrest Plaintiff because the "statute of limitations to commence a criminal action against Plaintiff for the May 2019 controlled purchase was not set to expire until May of 2024."  Dkt No. 39-2 at ¶ 18; Dkt. No. 39-3 at ¶ 16 (citing New York Criminal Procedure Law ("N.Y. CPL") § 30.10(2)(b)).

[17] Defendant Lussi did not prepare or sign the Felony Complaint.  Dkt. No. 39-3 at ¶ 20.

[18] Plaintiff points out that the Arrest Report contained errors, including incorrectly indicating that Plaintiff is Hispanic and was arraigned in the Town of Union Court, when he was arraigned in Binghamton City Court.  Dkt. No. 39-2 at ¶ 26; Dkt. No. 50 at 5-6, 15-16.

[19] Plaintiff was indicted on the homicide in Tioga County and convicted after a jury trial of the following charges: Murder in the Second Degree, Burglary in the First Degree, and two counts of Criminal Possession of a Weapon in the Second Degree.  Dkt. No. 39-5 at ¶ 56.  Plaintiff was sentenced to a term of imprisonment of twenty-five years to life and is currently in the custody of the Department of Corrections and Community Supervision.  *Id.* at ¶ 57.

[20] ADA Frank, a Senior ADA in the Broome County District Attorney's Office Violent Crimes

No. 39-5 at ¶ 59.  Senior ADA Frank asserts that he dismissed Plaintiff's charge for two reasons, judicial economy and lack of a speedy trial.  Dkt. No. 39-5 at ¶ 60.[21]  Senior ADA Frank had received information that Plaintiff was indicted for "charges of murder, burglary, and weapons possession" in Tioga County, which carried significantly greater sentences than the CSCS charge, and believed "it was no longer in the best interest of judicial economy to reveal the [CI] who made the controlled purchase in order to proceed with grand jury and ultimately trial." *Id.* at ¶¶ 61-63.[22] Defendants were not involved in the decision to dismiss the CSCS charge against Plaintiff.  Dkt. No. 39-2 at ¶ 29; Dkt. No. 39-3 at ¶ 24.

## III.   STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4

---

Bureau, was assigned to prosecute the CSCS charge against Plaintiff.  Dkt. No. 39-5 at ¶ 58.

[21] On April 19, 2021, Senior ADA Frank testified at a pretrial suppression hearing for Plaintiff's murder and related charges, before the Hon. Gerald A. Keene about the reasons he dismissed the CSCS charge against Plaintiff.  Dkt. No. 39-4 at 5-9.

[22] Plaintiff alleges that the charge was dropped, *see* Dkt. No. 50 at 24, because the District Attorney's Office was not able to "sustain a burden of proof at trial … meaning there was nothing factual to support the allegations."  *Id.* at 3.

(N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

The party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [their] right to judgment as a matter of law." *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

Here, both the Plaintiff and Defendants have moved for summary judgment, but that phenomenon "does not mean that the court must grant judgment as a matter of law for one side or the other." *Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 313 (2d Cir. 1981); *see also Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co.,* 884 F. Supp. 2d 3, 7 (E.D.N.Y. 2012) ("Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute.") (citations omitted). Rather, the court "must consider each motion separately and on its own merits and draw all reasonable inferences against the party whose motion

is under consideration." *Abreu v. Romero*, No. 08 CIV. 10129 (LAP), 2010 WL 4615879, at *3 (S.D.N.Y. Nov. 9, 2010), *aff'd*, 466 F. App'x 24 (2d Cir. 2012).

Additionally, because Plaintiff is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (citation omitted). Nevertheless, "proceeding *pro se* does not otherwise relieve [a party] from the usual requirements of summary judgment." *Skinner v. Chapman*, 680 F. Supp. 2d 470, 475 (W.D.N.Y. 2010) (quoting *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00 CIV. 8594 (LAP), 2003 WL 102853 at *5 (S.D.N.Y. Jan. 9, 2003)). "Those requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth 'concrete particulars' showing that a trial is needed." *Id.* (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).

## IV.   DISCUSSION[23]

### A.  False Arrest

A Section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law. *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007). To establish a cause of action for false arrest under New York law, a plaintiff must show that: (1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Morales v. United States*, No. 18-CV-4247 (CBA) (RER), 2023 WL 2129580, at *4 (E.D.N.Y. Feb. 17, 2023) (citing

---

[23] The Court finds that Plaintiff's Cross-Motion is procedurally deficient. *See* Dkt. No. 43 (deadline for Plaintiff's response to Defendants' Motion); NDNY Local Rules 7.1(c) (setting filing deadlines for a party's cross-motion), 56.1(a) (requiring a short and concise statement of each material fact in numbered paragraphs). However, in light of Plaintiff's *pro se* status, the Court will consider the merits of his Cross-Motion.

*Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).[24]

### 1. Probable Cause

#### a. Defendants' Motion

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim because "Plaintiff's [August 28, 2019] arrest was supported by probable cause."  Dkt. No. 39-6 at 5.  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under [Section] 1983."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

In "assessing probable cause, a court 'must consider [only] those facts available to the officer at the time of the arrest and immediately before it,'" *Sagy v. City of N.Y.*, No. 18-CV-1975 (HG), 2022 WL 6777602, at *3 (E.D.N.Y. Oct. 11, 2022) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)) (alteration in original), and make "an objective rather than subjective inquiry as to the 'reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest,'" *Jenkins v. City of NY*, No. 10 CIV. 4535 (AJN), 2013 WL 870258, at *6 (S.D.N.Y. Mar. 6, 2013) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  Even when an officer does not have a warrant when making an arrest, "[s]uch an arrest comports with the Fourth Amendment if the officer has 'probable cause to believe that a criminal offense has been or is

---

[24] Defendants, for the purpose of this Motion only, do not dispute that Plaintiff was intentionally confined and that Plaintiff was conscious of and did not consent to the confinement.  Dkt. No. 39-6 at 13 n.7.

being committed.'"  *Marcavage v. City of N.Y.*, 689 F.3d 98, 109 (2d Cir. 2012) (quoting *Devenpeck*, 543 U.S. at 152).

 "Officers may rely on hearsay to establish probable cause, and a court 'may properly consider such hearsay' at summary judgment."  *Dorsey v. Gannon*, No. 20-CV-1525 (PK/CPK), 2022 WL 4660555, at *3 (E.D.N.Y. Sept. 30, 2022) (quoting *Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 99 (E.D.N.Y. 2021)).  Additionally, information from a CI "can be sufficient to justify the existence of probable cause" unless "the circumstances raise doubt as to the person's veracity." *Panetta*, 460 F.3d at 395 (citations omitted).

Here, Major Crimes had information that Plaintiff was a known drug dealer in the Binghamton Area dating back to the mid-2000s.  Dkt. No. 39-2 at ¶ 7.  Additionally, Defendants were present when the CI spoke with Plaintiff using the telephone number and arranged to purchase narcotics from him.  Dkt. No. 39-5 at ¶¶ 15-16.  Defendants searched the CI to ensure the CI was not in possession of narcotics before the Controlled Purchase and listened to the entire conversation between the CI and Plaintiff through the recording device provided to the CI.  *Id.* at ¶¶ 18, 21-22.[25]  After the Controlled Purchase, the CI returned to Defendants without money and provided the drugs purchased, which field tested positive for the presence of cocaine.  *Id.* at ¶¶ 23-26.  The CI was also interviewed in the presence of Defendants and reviewed and signed a statement verifying its authenticity.  *Id.* at ¶¶ 27-29.

The Court finds based on the totality of the circumstances that Defendants had reasonably trustworthy information to believe that Plaintiff knowingly and unlawfully sold narcotics, *see* N.Y. Penal Law § 220.39(1), and therefore that they had probable cause to arrest Plaintiff.

---

[25] The Court also listened to the recording of the transaction which was submitted for *in camera* review.  *See supra* n. 12.

### b.  Plaintiff's Cross-Motion

Plaintiff in his Cross-Motion argues that he is entitled to summary judgment on the false arrest claim because there was no probable cause for his August 28, 2019 arrest.  Each of Plaintiff's arguments is unavailing.

Plaintiff argues that Defendants have refused to comply with Plaintiff's "several attempts through discovery" requests to identify the CI, and therefore Defendants are unable to "prove that they acted on reasonable, trustworthy information."  Dkt. No. 50 at 110.[26]  Generally, the government is "entitled to withhold the identities of its confidential informants under the 'informer privilege.'"[27]  *United States v. Wilson*, No. 5:14-CR-0273 (GTS), 2015 WL 13215023, at *4 (N.D.N.Y. Sept. 23, 2015).  Plaintiff "bears the burden of showing the need for disclosure of [the] informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial."  *United States v. Cobb*, 544 F. Supp. 3d 310, 333 (W.D.N.Y. 2021) (quoting *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997)).

Here, Defendants produced evidence sufficient to demonstrate that they obtained reliable and trustworthy information from the CI.  *See supra* § IV(A)(1)(a).  Additionally, the Court has determined that the safety needs of protecting the identity of the CI outweigh any of Plaintiff's

---

[26] Plaintiff also argues that Defendants' failure to "produce the alleged informant" violates his right to Confrontation under the Sixth Amendment.  Dkt. No. 50 at 110.  However, this argument fails because the Confrontation Clause does not apply in civil cases.  *See Marquez-Ortiz v. United States*, No. 20-CV-5793 (JPO), 2023 WL 3568806, at *3 (S.D.N.Y. May 18, 2023).

[27] "The law-enforcement privilege (or the informer's privilege) permits the government 'to withhold from disclosure the identity of persons who furnish information of violations of law to officers charge[d] with enforcement of that law.'"  *Goodloe v. City of N.Y.*, 136 F. Supp. 3d 283, 293 (E.D.N.Y. 2015) (quoting *Roviaro v. U.S.*, 353 U.S. 53, 59 (1957)).  The purpose is to "prevent disclosure of law-enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law-enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."  *Id.* (quoting *In re City of N.Y.,* 607 F.3d 923, 941 (2d Cir. 2010)).

potential due process concerns.[28]  *See Goodloe*, 136 F. Supp. 3d at 295 (finding that the law enforcement privilege applied to disclosing information which would compromise "the CI's safety and the continuing availability of confidential-informant-based investigations").

Plaintiff next argues that Defendants are unable to identify him "as the person on the recording" of the alleged drug sale because Defendants did not observe "the alleged drug buy" and "there is nothing in the record to establish [that Defendants] knew [Plaintiff's] voice."  Dkt. No. 50 at 111.  Information from a CI, even without officers directly overseeing the drug sale, can support a finding of probable cause if "it is corroborated in material respects by independent evidence."  *See United States v. Wagner,* 989 F.2d 69, 72-73 (2d Cir. 1993) (noting that "[a]n informant's participation in supervised drug purchases [was] powerful corroborative evidence for purposes of determining probable cause."); *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991) (noting that a "face-to-face informant" is more reliable than an anonymous telephone tipster); *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 402 (S.D.N.Y. 2009) (finding that "information from a single confidential informant" was sufficient to establish probable cause when there was no indication or evidence that the CI was not credible).  Here, there was corroborating evidence to support Defendants' finding of probable cause, including that Defendants were present when the CI contacted the telephone number and arranged to buy drugs from Plaintiff, the CI subsequently met with Plaintiff to purchase narcotics, there was an audio recording of the

---

[28] On September 2, 2022, Plaintiff filed a letter-request requesting that Defendants disclose to him a copy of the CI's telephone and audio recording of the alleged transaction with the CI, which were submitted to the Court for *in camera* inspection.  *See* Dkt. No. 42.  On October 12, 2022, United States District Judge Glenn T. Suddaby found "[b]ased on the Court's *in camera* inspection" and "for the reasons in Defendants' letter-brief," *see* Dkt. No. 44, that disclosure "would be inappropriate (in that safety needs significantly outweigh any potential due process concerns) and that, in any event, the Court may decide Defendants' motion for summary judgment without relying on those records."  *See* Dkt. No. 47.

Controlled Purchase, the narcotics field tested positive for cocaine, and the CI signed and verified the authenticity of the transcribed statement. *See* Dkt. No. 39-5 at ¶¶ 15-26, 29.[29]

Plaintiff also argues that because the charge related to the drug sale was dismissed, it was a "sham arrest" which was "maliciously carried out to incriminate [Plaintiff] in a separate offense." Dkt. No. 50 at 111. Here, Senior ADA Frank's decision to dismiss Plaintiff's CSCS charge was based on judicial economy and speedy trial grounds, not whether probable cause existed at the time of Plaintiff's arrest. Dkt. No. 39-4 at ¶ 5; Dkt. No. 39-5 at ¶ 60. The fact that Plaintiff's case was dismissed is insufficient to establish the absence of probable cause for his arrest. *See Marshall v. Port Auth. of New York & New Jersey*, No. 19-CV2-168, 2020 WL 5633155, at *7 (S.D.N.Y. Sept. 21, 2020) ("[T]his Court agrees with other district judges in this Circuit who have held that dismissal of a plaintiff's case on speedy trial grounds 'does not affirmatively indicate his innocence, as required under Section 1983.'") (quoting *Thompson v. City of N.Y.*, 2019 WL 162662, at *4 (S.D.N.Y. Jan. 10, 2019) and collecting cases); *see also Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (noting that prosecutors' "failure to seek a grand jury indictment does not serve as evidence against a finding that probable cause existed to arrest and prosecute" a plaintiff).[30]

---

[29] While the Court can decide Defendants' Motion without reliance on the records submitted to the Court for *in camera* inspection, *see* Dkt. No. 47, the Court also notes that the photographs and recording contradict Plaintiff's arguments that the CI did not exist and the Controlled Purchase did not occur.

[30] Plaintiff also argues that Judge Keene ruled in the Tioga County homicide case that Defendant Dean's grand jury testimony about the drug sale was hearsay, which is further evidence of his "frivolous and false arrest." Dkt. No. 50 at 111. However, this argument is misguided because Judge Keene's October 9, 2020 Decision and Order, *see id.* at 78-79, found that although the prosecutor introduced some hearsay through Defendant Dean's grand jury testimony regarding the telephone number used in the Controlled Purchase, the prosecutor gave the grand jury a proper limiting instruction. *Id.* at 78-79. Additionally, Judge Keene's October 1, 2021 Decision and Order, *see id.* at 70-76, precluded the People from presenting evidence concerning the May 2019 Controlled Purchase because the "prejudicial effect outweigh[ed] the probative value." *Id.* at 74.

## 2.  Qualified Immunity

Defendants further argue that even if the Court were to find that there was not actual probable cause to arrest Plaintiff, they are nonetheless entitled to qualified immunity on Plaintiff's false arrest claim.  Dkt. No. 39-6 at 25-26.   Plaintiff argues in his Cross-Motion that Defendants are not entitled to qualified immunity because they acted based on pure speculation that Plaintiff was a drug dealer, Defendants did not directly observe the Controlled Purchase, and Defendants have not proven the reliability of the CI.  Dkt. No. 50 at 124-27.

Qualified immunity shields government officials from liability for money damages for violation of a right under federal law if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It allows government officials to make reasonable judgments and is said to protect "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

 "Even where actual probable cause does not exist, an officer may be entitled to qualified immunity on a [Section] 1983 false arrest claim if his actions were objectively reasonable or if 'arguable probable cause' existed at the time of the arrest."  *Triolo v. Nassau Cnty.*, 24 F.4th 98, 107 (2d Cir. 2022) (citing *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)).  An officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Wilson v. Town of Cheektowaga*, No. 1:18-CV-01255 (EAW), 2023 WL 1784673, at *6 (W.D.N.Y. Feb. 6, 2023) (citation omitted).

"Arguable probable cause is an 'analytically distinct test for qualified immunity' that 'is more favorable to the officers than the one for probable cause.'"  *Reeder*, 2023 WL 2044126, at

*7 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).  Whether "an officer's conduct was 'objectively reasonable'" depends on "the information possessed by the officer at the time of the arrest," not "the subjective intent, motives, or beliefs of the officer."  *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (citation omitted).  "Put another way, an arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed."  *Rodriguez v. City of N.Y.*, 291 F. Supp. 3d 396, 409 (S.D.N.Y. 2018) (quoting *Figueroa*, 825 F.3d at 100).

Here, as discussed above, the Court finds that it was objectively reasonable for Defendants to believe that probable cause existed to arrest Plaintiff on August 28, 2019, or at the very least for officers of reasonable competence to disagree on whether probable cause existed to arrest Plaintiff.  Therefore, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's false arrest claim.  *See, e.g.*, *Smith v. City of N.Y.,* No. 04 CIV. 3286 (TPG), 2010 WL 3397683, at *16 (S.D.N.Y. Aug. 27, 2010) (finding that a defendant was entitled to qualified immunity for a false arrest claim because it was objectively reasonable for defendant to arrest the plaintiff based on a "radio communication from [another police officer] that plaintiff had engaged in a suspected drug transaction") (internal citations omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013).  Accordingly, Defendants' Motion as to the false arrest claim is granted and Plaintiff's Cross-Motion is denied.

### B.  Malicious Prosecution

Defendants next argue that Plaintiff's malicious prosecution claim should be dismissed because there "was probable cause to arrest Plaintiff on August 28, 2019," and the criminal proceeding against Plaintiff "was not instituted with malice."  Dkt. No. 39-6 at 15.  Defendants also argue that the malicious prosecution claim should be dismissed against Defendant Lussi because

he did not commence a criminal proceeding against Plaintiff. *Id.* Finally, Defendants argue that they are entitled to qualified immunity. *Id.* at 25-26.

To state a claim for malicious prosecution pursuant to Section 1983,[31] a plaintiff must allege facts plausibly suggesting the following four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 294 (N.D.N.Y. 2018) (citations omitted). Additionally, "a plaintiff must allege a violation of rights pursuant to the Fourth Amendment that resulted in a sufficient 'post-arraignment deprivation[] of liberty.'" *Id.* (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)).[32]

### 1. Probable Cause

As with a false arrest claim, the existence of probable cause is a complete defense to a claim of malicious prosecution. *Borges v. City of N.Y.*, 621 F. Supp. 3d 362, 372 (E.D.N.Y. 2022) (citing *Delamota v. City of N.Y.*, 683 F. App'x 65, 66 (2d Cir. 2017)). "The probable cause determination relevant to a malicious prosecution claim differs from that of a false arrest claim only insofar as 'the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced ... not the time of the preceding warrantless arrest.'" *Peterson v. Regina,* 935 F. Supp. 2d 628, 642 (S.D.N.Y. 2013) (quoting *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000)). "Probable cause, in the context of malicious prosecution, has also been

---

[31] A malicious prosecution claim arising under Section 1983 is "governed by the same standard applied under state law." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (citing *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)).

[32] Defendants, for purposes of this motion only, do not dispute that Plaintiff has satisfied the following elements of his malicious prosecution claim: (1) Investigator Dean commenced a criminal proceeding against him; and (2) the criminal proceeding was terminated in Plaintiff's favor. Dkt. No. 51 at 8 n.1.

described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983)).

Here, as discussed above, *supra* § IV(A)(1), there was probable cause to arrest Plaintiff on August 28, 2019. "Once probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, 'the groundless nature of the charges [is] made apparent by the discovery of some intervening fact.'" *Soomro v. City of N.Y.*, 174 F. Supp. 3d 806, 814 (S.D.N.Y. 2016) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996)).

Plaintiff has not presented any facts subsequent to his arrest which would negate that there was probable cause for his arrest. Additionally, a reasonably prudent person could believe that Plaintiff knowingly and unlawfully sold narcotics. *See Smith*, 2010 WL 3397683, at *9 (finding that there was probable cause to prosecute plaintiff when he did not present facts after his arrest to "negate probable cause" and a "a reasonably prudent person would likely believe the plaintiff to be guilty").[33]

### 2. Malice

Plaintiff argues that Defendants initiated or continued the prosecution against him with

---

[33] The parties have made the same arguments regarding qualified immunity for the malicious prosecution claim as with the false arrest claim. *See supra* § IV(A)(2); Dkt. No. 39-6 at 25-26; Dkt. No. 50 at 124-27; Dkt. No. 51 at 12. A police officer is entitled to qualified immunity on a malicious prosecution claim if he possesses arguable probable cause to charge the Plaintiff. *See Flores v. Cnty. of Suffolk*, No. 2:16-CV-02502 (ADS) (ARL), 2018 WL 3966246, at *10 (E.D.N.Y. Aug. 17, 2018). Arguable probable cause for a malicious prosecution claim exists "where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the officer] to charge [the plaintiff]' with the crime in question." *Id.* (quoting *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011)). The Court finds that Defendants are entitled to qualified immunity on the malicious prosecution claim because there was arguable probable cause to charge Plaintiff with CSCS in the third degree.

malice "in an effort to link him to a cell phone that would hold him for an investigation" in a homicide in Tioga County in order to gain "incriminating information/evidence" against him.  Dkt. No. 50 at 113.  In a malicious prosecution claim, malice "can be demonstrated 'by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'"  *Aguirre v. City of N.Y.*, No. 15-CV-6043 (PKC), 2017 WL 4236552, at *9 n.11 (E.D.N.Y. Sept. 22, 2017) (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)).  Malice "does not have to be actual spite or hatred but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Guillen v. City of N.Y.*, 625 F. Supp. 3d 139, 156 (S.D.N.Y. 2022) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).[34]

Here, Plaintiff has not presented any evidence from which a reasonable jury could conclude that Defendants acted with improper motives in initiating a criminal proceeding against him. Regardless of Major Crimes' desire to verify that the telephone number belonged to Plaintiff, Dkt. No. 39-2 at ¶ 8, there was probable cause to believe Plaintiff knowingly and unlawfully sold crack cocaine to the CI in a Controlled Purchase that Plaintiff arranged on the telephone number.  *See supra* § IV(A)(1); N.Y. Penal Law § 220.39(1).  Therefore, Plaintiff is unable to establish that Defendants initiated the prosecution against him with malice.  *See, e.g., Guillen*, 625 F. Supp. 3d at 156 (finding that Plaintiff's malicious prosecution claim failed because there was probable cause

---

[34] While "actual malice and lack of probable cause are independent elements of a malicious prosecution claim, they do relate to one another."  *Landon v. Cnty. of Orange*, No. 08-CV-8048 (CS) (LMS), 2009 WL 2191335, at *9 (S.D.N.Y. July 23, 2009); *see also Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996) (holding that, "[i]n most cases, the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause") (internal quotation omitted).

and "no evidence that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by something other than a desire to see the ends of justice served") (internal quotation marks and citation omitted).[35]

Accordingly, Defendants' Motion as to Plaintiff's malicious prosecution claim is granted and Plaintiff's Cross-Motion is denied.

## C. Fabrication of Evidence

Individuals have a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity." *Maldonado v. City of N.Y.*, No. 11 CIV. 3514 (RA), 2014 WL 787814, at *9 (S.D.N.Y. Feb. 26, 2014) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 344, 349 (2d Cir. 2000)).   "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under [Section 1983]." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted).  The "right to a fair trial can be violated even if the fabricated evidence that was supplied to the prosecutor was not ultimately used at trial." *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 535 (E.D.N.Y. 2021) (citing *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020)).

To succeed on a Section 1983 claim alleging a violation of an accused person's right to a

---

[35] Defendants also argue that Plaintiff is unable to establish that Defendant Lussi commenced a criminal proceeding against Plaintiff because he "did not swear to or sign the felony complaint," *see Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010) (Police Officers "initiate [a] prosecution by filing charges or other accusatory instruments.") (citation omitted).   Dkt. No. 39-6 at 16.   Even assuming the Court were to find that Defendant Lussi initiated the criminal proceeding against Plaintiff, Plaintiff's malicious prosecution claim still fails because, as discussed above, *see supra* § IV(B)(1), (2), there was probable cause to arrest Plaintiff on August 28, 2019 and Plaintiff has not established that Defendants acted with malice when commencing a criminal proceeding against him.

fair trial based on fabrication of evidence, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Aguirre*, 2017 WL 4236552, at *10 (brackets omitted) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).[36]  A Section 1983 claim based on the right to a fair trial does not require that a criminal charge proceed to trial.  *Snead v. City of N.Y.*, 463 F. Supp. 3d 386, 392 (S.D.N.Y. 2020); *see also Ricciuti*, 124 F.3d at 127 (considering a Section 1983 claim for right to a fair trial where the plaintiffs' criminal charges were dismissed pre-trial).  "Rather, the allegedly false information must be material such that it 'would likely influence the jury if it arrived at a jury.'"  *Snead*, 463 F. Supp. 3d at 392 (quoting *Garnett v. Undercover Officer C0039*, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015)).

Defendants argue that there is no "admissible evidence in the record" to support Plaintiff's allegations that Defendant Dean fabricated the following evidence after Plaintiff's arrest: (1) the Evidence Log; (2) the Felony Complaint; (3) the CI's supporting deposition; (4) the Incident Report; (5) the Arrest Report; and (6) the VGNET Southern Tier Report Routing Slip ("Report Routing Slip").  Dkt. No. 39-6 at 18 (citing Dkt. No. 9 at 4-5); Dkt. No. 51 at 116-17.[37]

Plaintiff argues that the Evidence Log, *see* Dkt. No. 9 at 15, was fabricated because it omitted the date and time of the sale and the amount of crack cocaine seized, *see id.* at 5, and the

---

[36] Unlike false arrest and malicious prosecution claims, the "existence of probable cause to arrest is not a defense to a fair trial right claim."  *Cunningham v. City of N.Y.*, No. 17-CV-5124 (DLC), 2018 WL 4168964, at *5 (S.D.N.Y. Aug. 30, 2018) (citation omitted).

[37] Plaintiff further argues in his Cross-Motion that Senior ADA Frank's dismissal of his charges pursuant to N.Y. CPL § 160.50 shows that reports which were written or signed by Defendants were fabricated.  *See* Dkt. No. 50 at 115-16.  Plaintiff's argument lacks merit as the dismissal of Plaintiff's charge was based on judicial economy and lack of a speedy trial, not whether there was probable cause to arrest Plaintiff.  *See* Dkt. No. 39-4 at ¶ 5.

Felony Complaint, *see id.* at 8, was fabricated because it does not state the exact date or time of the alleged sale, *see id.* at 4.[38]  Plaintiff also argues that the CI's supporting deposition, *see id.* at 11-12, was fabricated because it was handwritten by Defendant Dean and the signature was redacted.  *Id.* at 4; Dkt. No. 50 at 6, 118.

Defendant Dean explained in his Declaration that the date and time and quantity of crack cocaine seized was redacted from the Evidence Log, and the exact date and time of the Controlled Purchase was not included in the Felony Complaint, to protect the identity of the CI.  Dkt. No. 39-2 at ¶¶ 11 n.2, 20.  Defendant Dean further explained, regarding the handwritten deposition of the CI's statement, that it "is common practice for an officer to transcribe the CI's statement" in order to protect a CI's identity, and the CI signed and verified the authenticity of the statement.  *Id.* at ¶¶ 15-17.

As discussed above, *see supra* § IV(A)(1)(b), Defendants were not obligated to disclose to Plaintiff information which could identify the CI.  Additionally, Plaintiff has not provided any evidence to show that the information in the Evidence Log, Felony Complaint, or the CI's supporting deposition was fabricated because information was omitted or redacted to protect the identity of the CI.  *See Greene v. City of N.Y.*, No. 08 Civ. 00243 (AMD) (CLP), 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017) (granting summary judgment on plaintiff's fair trial claim because plaintiff's claim that a defendant falsified evidence was "sheer speculation, and [did] not create a material issue of fact for trial"); *Demosthene v. City of N.Y*, No. 14-CIV-816 (SJ) (VMS), 2018 WL 10072931, at *7 (E.D.N.Y. July 20, 2018) (finding plaintiff did not "offer any affirmative evidence of fabrication" by "simply point[ing] to the lack of" papers signed by the

---

[38] Defendants also point out that there is no requirement in New York's Criminal Procedure Law for the Felony Complaint to state the exact date or time of the drug sale.  Dkt. No. 39-6 at 18-19 (citing N.Y. CPL §§ 100.15, 100.40(4)).

complaining victim), *report and recommendation adopted*, No. 14-CV-816 (SJ) (VMS), 2019 WL 3992868 (E.D.N.Y. Aug. 16, 2019), *aff'd*, 831 F. App'x 530 (2d Cir. 2020); *Culpepper v. City of N.Y.,* No. 14-CV-6585 (ALC), 2016 WL 5334978, at *6 (S.D.N.Y. Sept. 21, 2016) (granting summary judgment on fair trial claim because plaintiff presented "only conclusory allegations to establish [that the NYPD Detective] fabricated evidence and forwarded that information to prosecutors").

Plaintiff argues that Defendant Dean's Incident Report, *see* Dkt. No. 50 at 26-28, was fabricated because it was written weeks after the alleged drug sale occurred, and the Incident Report incorrectly states that Plaintiff was "arraigned in the City of Binghamton City Court and remanded to the Broome County Jail" on August 28, 2019, when he was actually "remanded without bail" on August 29, 2019. *Id.* at 109-10, 117. Plaintiff further argues that the Arrest Report, *see* Dkt. No. 9 at 13-14, and Incident Report, were fabricated because they contained errors, including that he is Hispanic, was arraigned in the Town of Union Court, and listed a different cell phone number than the telephone number. *Id.* at 4-5; Dkt. No. 50 at 5-6, 15, 26. Additionally, Plaintiff argues that the Evidence Log was fabricated because it did not contain a lab number. Dkt. No. 9 at 5; Dkt. No. 39-1 at 79:4-9.[39]

The Court finds that Plaintiff has not provided any evidence that there was a requirement for the Incident Report to be written on the date the alleged incident occurred. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory

---

[39] Defendant Dean in his Declaration stated that a "lab number was not required." Dkt. No. 39-2 at ¶ 20. Plaintiff argues that it "is false" that a lab number is not required because without a lab number "it would be impossible to keep track of evidence collected in the process of an investigation." Dkt. No. 50 at 10. Plaintiff does not offer any evidence to support this assertion. *See Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (to survive a motion for summary judgment, a plaintiff "may not rely on conclusory allegations or unsubstantiated speculation").

allegations or unsubstantiated speculation ….  Instead, 'the non-movant must produce specific facts indicating' that a genuine factual issue exists.").  Additionally, given the totality of evidence, Plaintiff has failed to show that the typographical and/or clerical errors in the Arrest Report and Incident Report, and the exclusion of the lab number in the Evidence Log, would influence a jury's decision in finding that Plaintiff knowingly and unlawfully sold narcotics under N.Y. Penal Law § 220.39(1).  *See Hoyos v. City of N.Y.,* 999 F. Supp. 2d 375, 394 (E.D.N.Y. 2013) (finding plaintiff's "assertion that defendants falsified evidence" of the location where he was arrested was "not likely [to] influence a reasonable jury's decision as to whether he [was] driving while intoxicated"); *see also Snead*, 463 F. Supp. 3d at 393 (finding that even though an officer fabricated information in the criminal complaint, the fabrication was not likely to influence a jury's verdict).

Finally, Plaintiff argues that the Report Routing Slip, *see* Dkt. No. 50 at 63, shows that the drug sale was fabricated because it was written fifteen days after his August 28, 2019 arrest.  Dkt. No. 50 at 118-19.  Plaintiff also argues that the Report Routing Slip left the sections "Buy Sheet Packet" and "CI Package" completely blank, which shows that "there was no drug sale" with "an informant."  *Id.* at 119.  Defendants in their Reply submitted as an exhibit, a Report Routing Slip, prepared in May 2019 after the Controlled Purchase, showing the "CI Package" checklist as completed, which is further evidence that a CI existed.  *See* Dkt. No. 51-1 at 4-5.

In sum, Plaintiff has not presented sufficient evidence to substantiate his claim that Defendant Dean fabricated evidence.  Accordingly, Defendants' Motion as to the fabrication of evidence claim is granted and Plaintiff's Cross-Motion is denied.

### D.  Defamation

Plaintiff's state law defamation claim against Defendant Dean alleges that Dean provided false testimony to the grand jury in Plaintiff's homicide case in Tioga County regarding the drug sale, which "did not occur," and a "non-existent informant" who contacted Plaintiff at the phone

number, which was not Plaintiff's.  Dkt. No. 39-6 at 20-21 (citing Dkt. No. 9 at 5-6; Dkt. No. 39-1 at 83-84).[40]  Defendants argue that Plaintiff's defamation claim should be dismissed for four reasons: "(1) it is time barred; (2) Investigator Dean is entitled to absolute immunity; (3) Plaintiff's claims are barred by the *Heck* doctrine;[41] and (4) there is no admissible evidence to support Plaintiff's defamation claim."  *Id.* at 21.

Defendants' primary argument is that Defendant Dean is entitled to absolute immunity for his grand jury testimony.  Dkt. No. 39-6 at 21-22.  Plaintiff, in his Cross-Motion, concedes that Defendant Dean's grand jury testimony was "absolutely immune."  Dkt. No. 50 at 123.  Witnesses "'testifying before a Grand Jury are protected by an absolute immunity,' just as they would if giving testimony in court."  *Stega v. New York Downtown Hosp.,* 31 N.Y.3d 661, 670 (2018) (quoting *Toker v. Pollak*, 44 N.Y.2d 211, 219-20 (1978)).  The New York Court of Appeals has explained:

> [W]e have recognized the need to shield grand jury witnesses from liability for defamation based on their testimony, and we have generally observed that public officials would be unduly deterred from the full and frank discharge of their duties were their false statements, made in the course of their official functions or in judicial proceedings, to become the source of civil liability.

---

[40] Plaintiff in his Opposition and Cross-Motion also argues for the first time that Defendant Dean defamed him by fabricating evidence in order to institute a criminal action against Plaintiff. *Compare* Dkt. No. 9 at 5-6; *with* Dkt. No. 50 at 120-21.  The Court agrees with Defendants that Plaintiff cannot use his Cross-Motion to amend his Complaint, and therefore, the Court will not consider this argument.  *See* Dkt. No. 51 at 11; *see also Feliz v. City of N.Y.,* No. 19-CV-6305 (DLC), 2023 WL 2601111, at *4 (S.D.N.Y. Mar. 22, 2023) (noting that a plaintiff may not amend a complaint in opposing a dispositive motion).  Even if the Court were to consider Plaintiff's argument, it is time-barred because Plaintiff concedes that the alleged "libel" of Defendant Dean forwarding the felony complaint "occurred weeks" before Defendant Dean's September 12, 2019 grand jury testimony.  Dkt. No. 50 at 123.  Plaintiff did not initiate this action until October 13, 2020, more than one year later.  *See* Dkt. No. 1; *see also Etheredge-Brown v. Am. Media, Inc*., 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) (New York imposes a one-year statute of limitations on defamation claims) (citing N.Y. CPLR § 215(3)).

[41] *See Heck v. Humphrey*, 512 U.S. 477 (1994).

*De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 770 (2016); *see also Rehberg v. Paulk,* 566 U.S. 356, 369-74 (2012) (holding, in the context of Section 1983, that "grand jury witnesses should enjoy the same immunity as witnesses at trial" because the "proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings").   Accordingly, the Court finds that Defendant Dean's grand jury testimony was entitled to absolute immunity.

Defendants also argue that, assuming *arguendo* Defendant Dean's grand jury testimony was not entitled to absolute immunity, Plaintiff's defamation claim fails on the merits because "Plaintiff cannot establish that [Defendant] Dean's [grand jury] testimony was substantially false." Dkt. No. 39-6 at 24.  "Under New York law, establishing a claim for defamation requires a plaintiff to allege: (1) the making of a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statement concerned the plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was *per se* defamatory, or caused special damages."  *Lader v. Delgado*, 941 F. Supp. 2d 267, 271 (E.D.N.Y. 2013) (citations omitted).  Truth "provides a complete defense to defamation claims."  *Cain v. Atelier Esthetique Inst. of Esthetics Inc*., 733 F. App'x 8, 11 (2d Cir. 2018) (citing *Dillon v. City of N.Y.*, 261 A.D.2d 34, 39 (1st Dep't 1999)); *see also Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986) ("[I]t is not necessary to demonstrate complete accuracy to defeat a charge of [defamation].  It is only necessary that the gist or substance of the challenged statements be true.").

Here, Plaintiff has not produced evidence sufficient to demonstrate that Defendant Dean provided false grand jury testimony.  Defendant Dean testified about the May 2019 Controlled Purchase, including that the CI contacted Plaintiff using the telephone number.  Dkt. No. 39-2 at ¶ 27.  Defendant Dean also declared that his testimony was "true and accurate based on [his] own personal knowledge."  *Id*.  Defendants further submitted to the Court for *in camera* inspection a

photograph of the CI's telephone call log and an audio recording of the Controlled Purchase.  *Id.* at ¶¶ 11-12.  Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's defamation claim.[42]

### V.       CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Cross-Motion for Summary Judgment, Dkt. No. 50, is **DENIED** in its entirety; and the Court further

**ORDERS** that Defendants' Motion for Summary Judgment dismissing the Amended Complaint in its entirety, Dkt. No. 39, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's Amended Complaint, Dkt. No. 9, be **DISIMISSED** in its entirety; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>August 24, 2023</u>
       Albany, New York

                                              Anne M. Nardacci
                                              U.S. District Judge

---

[42] Because the Court finds that Defendant Dean's testimony is entitled to absolute immunity and Plaintiff's defamation claim fails on the merits, the Court does not need to address the parties' arguments related to the Statute of Limitations and the *Heck* Doctrine.  Dkt. No. 39-6 at 21-23; Dkt. No. 50 at 120-23.